In the

# United States Court of Appeals

### For the Seventh Circuit

No. 03-3364

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN JOHNSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP-03-43-CR-01—**Sarah Evans Barker**, *Judge.*

SUBMITTED AUGUST 31, 2005—DECIDED OCTOBER 27, 2005

Before CUDAHY, RIPPLE, and WILLIAMS, *Circuit Judges.*

CUDAHY, *Circuit Judge.* John Johnson was convicted of possession with intent to distribute crack cocaine, 21 U.S.C. § 841(a), after the district court denied his motion to suppress the crack found in his home during a warrantless search. Although Johnson consented to the search, he argues that his consent was tainted because he gave it while being illegally detained. In August 2004 we ordered a limited remand to permit the district court to consider further whether the detectives who came to Johnson's home to investigate an anonymous tip had reasonable suspicion for detaining him inside the threshold of his house. In light

of the district court's additional findings on remand and the subsequent concession by the government that the motion to suppress should have been granted, we now reverse Johnson's conviction.

## I.

The facts of the case have been presented in detail in both our August 2004 order and the district court's June 2005 response; accordingly, we provide only a brief summary here. On February 27, 2003, Stephen Blackwell, a detective assigned to a Madison County, Indiana, narcotics task force, received an anonymous tip that a "John Johnson" was in possession of a large amount of crack. The female caller stated that Johnson had picked up the crack in Muncie, Indiana, and brought it back to his "Fulton Street address" in the town of Anderson. The tipster also stated that Johnson picked up crack shipments on Thursdays and drove a white vehicle, but she offered no other details and did not explain the basis of her knowledge. The information was not otherwise corroborated. Blackwell and another detective, Cliff Cole, went to appellant Johnson's home to investigate the tip.

After watching Johnson's house for about five minutes, the detectives approached his girlfriend as she was leaving the house. She verified that Johnson lived there and was inside at the time. The detectives asked her to knock on the door, and after she did, Johnson answered. The detectives told Johnson about the anonymous tip and asked to search his house. Johnson denied that there were drugs in the house. After speaking to the detectives for several minutes, Johnson turned his back on them and retreated down a hallway. Detective Blackwell responded by drawing his gun, pointing it at the ground, and saying, "[I]f you go down that hallway, John, now it's an officer safety issue." Johnson stopped and turned back toward the detectives, and

Blackwell returned the gun to its holster. Blackwell asked again if he could search the house while Detective Cole phoned a supervisor to discuss whether they could get a search warrant. When Cole returned, Johnson said, "Well, you might as well come on in." The detectives entered the house, and Johnson told them to "go ahead and search." They found a package of crack in a dresser.

Johnson later moved to suppress the drugs, arguing that his consent was involuntary and, in any event, tainted by his illegal detention. The district court denied the motion and Johnson appealed. We previously upheld the district court's factual finding that the detectives did not coerce Johnson to consent. But we disagreed with the court's legal conclusion that Johnson was not "seized" for Fourth Amendment purposes when Detective Blackwell raised his gun and stopped Johnson in his tracks when he began walking back into the house. We could not, however, determine from the record whether the seizure was based on reasonable suspicion because certain facts were still in dispute. In particular, the district court had not resolved whether to credit testimony from both detectives that Johnson appeared agitated during the encounter and from Blackwell that he believed Johnson was going to retrieve a weapon when he started walking further into the house. In light of these open questions, we asked the district court to supplement the record with additional findings of fact and to "assess whether the officers reasonably suspected that Johnson was engaged in or was about to engage in criminal activity."

On remand the district court ordered supplemental briefing and held another hearing. After making supplemental findings, the court concluded that the detectives did not have reasonable suspicion to justify seizing Johnson. The court determined that Detective Blackwell wanted to prolong the encounter until he obtained consent to search, drawing his gun for that purpose, not because he feared

that Johnson was retrieving a weapon. The district court gave little weight to Blackwell's testimony that Johnson had been loud and agitated during the conversation, that Johnson had not asked to end the encounter and that Johnson left the door open when he went back into the house. The court noted that Blackwell never asked Johnson if he was armed or if there were weapons in the house, nor did he ask similar questions of Johnson's girlfriend. Upon concluding that the police lacked reasonable suspicion to detain Johnson, the court elected to "rescind" its denial of the suppression motion and to "grant" it instead.

After the district court submitted its supplemental findings, we asked the parties to address (1) whether the detectives had reasonable suspicion to seize Johnson; (2) whether any exception to the exclusionary rule would allow the evidence to be admitted in the absence of reasonable suspicion; and (3) whether the conviction could stand if the evidence was suppressed. Johnson argues that all three questions must be answered in the negative. The government does not challenge the district court's conclusion that the detectives lacked reasonable suspicion to effect a seizure and that Johnson's consent was therefore tainted. The government also concedes that no other exception to the exclusionary rule allows the admission of the drugs into evidence and that, without the drugs, the conviction cannot stand.

## II.

The Fourth Amendment's probable cause and warrant requirements do not apply where an authorized party voluntarily consents to a search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Melgar*, 227 F.3d 1038, 1041 (7th Cir. 2000). However, consent given during an illegal detention is presumptively invalid, *United States v. Cellitti*, 387 F.3d 618, 622-23 (7th

Cir. 2004), and any evidence discovered in a subsequent search is inadmissable unless the taint of the illegal conduct is somehow dissipated, *Wong Sun v. United States,* 371 U.S. 471, 488 (1963); *Cellitti,* 387 F.3d at 623. If the consent to search results from an independent act of free will, *see United States v. Pedroza,* 269 F.3d 821, 827 (7th Cir. 2001), or is sufficiently attenuated from the illegal police activity, *see United States v. Jerez,* 108 F.3d 684, 694-95 (7th Cir. 1997), the taint is "purged" and the consent is valid. When analyzing whether consent is valid despite unlawful police conduct, we consider (1) the time elapsed between the illegal conduct and the discovery of the evidence; (2) the existence of intervening circumstances; and (3) the nature of the official misconduct. *Brown v. Illinois,* 422 U.S. 590, 603-04 (1975); *Jerez,* 108 F.3d at 695.

When the police approach an individual in a confined space, a "seizure" occurs when a reasonable person would not feel free to decline the officers' request or otherwise terminate the encounter. *See United States v. Drayton,* 536 U.S. 194, 202 (2002); *United States v. Adeyeye,* 359 F.3d 457, 461 (7th Cir. 2004). As we held earlier, Johnson was seized inside his house when Detective Blackwell drew his gun to prevent Johnson from walking further into the interior. We must now decide whether the detectives had a reasonable suspicion that Johnson had been, or was about to be, engaged in criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 21 (1968); *United States v. Lenoir,* 318 F.3d 725, 729 (7th Cir. 2003). Absent such reasonable suspicion any seizure—wherever effectuated—would have been unlawful.

Both parties, in keeping with the district court' findings, now take the position that the detectives did not have reasonable suspicion to detain Johnson. We agree. The uncorroborated anonymous tip that prompted the visit did not supply this reasonable suspicion. *See Florida v. J.L.,* 529 U.S. 266, 270-71 (2000); *Alabama v. White,* 496 U.S. 325, 329 (1990); *United States v. Packer,* 15 F.3d 654, 659

(7th Cir. 1994). And although a law enforcement officer's knowledge of a suspect's criminal history may support the existence of reasonable suspicion, *United States v. Jackson*, 300 F.3d 740, 746 (7th Cir. 2002), such knowledge in itself is not enough, *see United States v. Walden*, 146 F.3d 487, 490-91 (7th Cir. 1998) (explaining that a criminal record *in conjunction with other information* may form the basis of reasonable suspicion). Here there is little information, other than the uncorroborated anonymous tip, to add to Johnson's criminal record as a basis for reasonable suspicion. Although Detective Blackwell testified that he thought Johnson might retrieve a weapon when he walked away from the front door, the district court discredited this statement and concluded that Blackwell did not really fear that Johnson was getting a weapon. Instead, the court determined that Blackwell's "essential motivation" was to prolong the encounter until Johnson consented to a search of his home. This finding is not clearly erroneous. *See, e.g., United States v. Ford*, 333 F.3d 839, 843 (7th Cir. 2003). And in this case, the unlawful seizure was ongoing when Johnson voiced his consent, foreclosing the possibility that the consent was sufficiently attenuated from the unlawful conduct as to purge the taint. *See Jerez*, 108 F.3d at 695. Having decided that the detectives lacked even reasonable suspicion to seize Johnson, we put aside our fourth question to the parties—whether police may seize a person inside his own home without a warrant or at least probable cause coupled with exigent circumstances, *see United States v. Payton*, 445 U.S. 573 (1980); *Lenoir*, 318 F.3d at 730-31; *United States v. Saari*, 272 F.3d 804, 809 (6th Cir. 2001); *LaLonde v. County of Riverside*, 204 F.3d 947, 954-55 (9th Cir. 2000).

We asked the parties to address whether any exception to the exclusionary rule would permit the admission of the crack despite the Fourth Amendment violation, and both parties have answered in the negative. Indeed, none of the recognized exceptions, *see, e.g., United States v. Leon*, 468

U.S. 897, 927 (1984) (good faith); *Nix v. Williams*, 467 U.S. 431, 448 (1984) (inevitable discovery), applies here. Accordingly, the drugs discovered in Johnson's home should not have been admitted into evidence. *See Elkins v. United States*, 364 U.S. 206, 223 (1960); *United States v. Robeles-Ortega*, 348 F.3d 670, 681 (7th Cir. 2003).

Although we agree with the district court's analysis and conclusion on remand, we cannot, as the parties request, "affirm" its decision to grant the motion. Because the appeal was still pending during the limited remand, the district court lacked jurisdiction to rescind its denial of the suppression motion and grant it instead. *See United States v. Turchen*, 187 F.3d 735, 743 (7th Cir. 1999) (explaining that the timely filing of a notice of appeal divests the district court of jurisdiction). To the extent the district court purported to grant the motion on remand, then, its order has no effect. The court's original ruling denying the motion is still before us, and we now hold that it should have been granted. We agree with the parties that the conviction cannot stand without the suppressed evidence, so we REVERSE Johnson's conviction and REMAND the case to the district court.

A true Copy:

      Teste:

 

                    _____

                    *Clerk of the United States Court of Appeals for the Seventh Circuit*