Jon S. JOHNSON, Appellant–Plaintiff,

v.

Stephon BLACKWELL, Individually, Cliff Cole, Individually, Anderson Police Department, Madison County Sheriff's Department, Appellees–Defendants.

No. 49A02–0709–CV–759.

Court of Appeals of Indiana.

April 28, 2008.

Nathaniel Lee, Marcelino Lopez, Lee Cossell Kuehn & Love, LLP, Indianapolis, IN, Attorneys for Appellant.

Renee J. Mortimer, Jennifer Kalas, Hinshaw & Culbertson, LLP, Schererville, IN, Attorneys for Appellees, Stephon Blackwell and Madison County.

Jason A. Childers, Hulse Lacey Hardacre Austin & Shine, P.C., Anderson, IN, Attorney for Appellees, Cliff Cole and Anderson Police Department.

## OPINION

VAIDIK, Judge.

### Case Summary

Following his conviction in federal district court for possession with intent to distribute crack cocaine, the Seventh Circuit reversed Jon S. Johnson's conviction in 2005, and the indictment against him was dismissed in 2006. Nearly four years after his February 27, 2003, arrest, John-

son filed a complaint against Stephon Blackwell, Cliff Cole, the Anderson Police Department, and the Madison County Sheriff's Department (collectively "Defendants") on November 21, 2006, in Marion Superior Court alleging civil rights violations, false imprisonment/false arrest, wrongful infliction of emotional distress, and invasion of privacy by intrusion. Finding that these causes of action accrued when Johnson was arrested or bound over for trial in 2003 and that the doctrines of continuing wrong and fraudulent concealment do not operate to toll the statute of limitations, we conclude that Johnson's complaint is barred by the two-year statute of limitations for injury to person. We therefore affirm the trial court.

### Facts and Procedural History

We take our underlying facts for this case from the Seventh Circuit's opinion reversing Johnson's conviction for possession with intent to distribute crack cocaine, *United States v. Johnson,* 427 F.3d 1053 (7th Cir.2005). Johnson largely relies upon *Johnson* to set forth the facts in his complaint in this case. On February 27, 2003, Stephon Blackwell, a detective assigned to a Madison County, Indiana, narcotics task force, received an anonymous tip that a "John Johnson"[1] was in possession of a large amount of crack. The female caller stated that Johnson had picked up the crack in Muncie, Indiana, and brought it back to his "Fulton Street address" in Anderson, Indiana. The tipster also stated that Johnson picked up crack shipments on Thursdays and drove a white vehicle; however, she offered no other details and did not explain the basis of her knowledge. The information was not otherwise corroborated. Blackwell and another detective, Cliff Cole, went to Johnson's home to investigate the tip.

After watching Johnson's house for about five minutes, the detectives approached his girlfriend as she was leaving the house. She verified that Johnson lived there and was inside at the time. The detectives asked her to knock on the door, and, after she did, Johnson answered. The detectives told Johnson about the anonymous tip and asked to search his house. Johnson denied that there were drugs inside. After speaking to the detectives for several minutes, Johnson turned his back on them and retreated down a hallway. Detective Blackwell responded by drawing his gun, pointing it at the ground, and saying, "[I]f you go down that hallway, John, now it's an officer safety issue." *Id.* at 1055. Johnson stopped and turned back toward the detectives, and Detective Blackwell returned the gun to its holster. Detective Blackwell asked again if he could search the house while Detective Cole phoned a supervisor to discuss whether they could get a search warrant. When Cole returned, Johnson said, "Well, you might as well come on in." *Id.* The detectives entered the house, and Johnson told them to "go ahead and search." *Id.* The detectives found a package of crack in a dresser.

Johnson was charged in the United States District Court for the Southern District of Indiana with possession with intent to distribute crack cocaine. Johnson moved to suppress the drugs, arguing that his consent was involuntary and tainted by his illegal detention. The district court denied his motion to suppress, and, on May 1, 2003, Johnson was convicted as charged. The district court sentenced him to 240 months of imprisonment and 10 years of supervised release.

---

1. Although Johnson's first name is spelled "Jon" in these state civil proceedings, his first name is spelled "John" in the federal criminal proceedings.

Thereafter, Johnson appealed the district court's denial of his motion to suppress to the Seventh Circuit. The Seventh Circuit retained jurisdiction but remanded the case to the district court for the limited purpose of allowing the court to make additional findings of fact on whether the detectives reasonably suspected that Johnson was engaged in or was about to engage in criminal activity and to analyze Johnson's motion in light of those findings. *United States v. Johnson*, 2004 WL 1873217, 107 Fed.Appx. 674 (7th Cir. Aug.18, 2004).

On remand, the district court heard additional evidence and concluded that the detectives lacked reasonable suspicion to seize Johnson. *United States v. Johnson*, 2005 WL 1528140, *4 (S.D.Ind. June 3, 2005). The case returned to the Seventh Circuit, which, on October 27, 2005, reversed Johnson's conviction and remanded the case to the district court. *Johnson*, 427 F.3d at 1058. The indictment was dismissed on July 14, 2006.

On November 21, 2006—nearly four years after his arrest—Johnson filed a four-count complaint against Defendants in Marion Superior Court. Specifically, Count I alleged civil rights violations[2]; Count II alleged false imprisonment/false arrest[3]; Count III alleged wrongful infliction of emotional distress[4]; and Count IV alleged invasion of privacy by intrusion.[5] All counts were based upon the search of Johnson's home and his arrest on Febru-

ary 27, 2003. On February 16, 2007, Defendants filed a motion to dismiss pursuant to Indiana Trial Rule 12(B)(6) arguing that Johnson's complaint was barred by the applicable two-year statute of limitations. Defendants also argued that Blackwell and Cole were improper parties because they were government employees acting within the scope of their employment. Following a hearing, the trial court dismissed this case on August 6, 2007. Johnson now appeals. Appellees Madison County and Blackwell and Appellees Anderson Police Department and Cole respond with separate briefs.

## Discussion and Decision

 Johnson contends that the trial court erred in dismissing his complaint pursuant to Indiana Trial Rule 12(B)(6). A civil action may be dismissed under Trial Rule 12(B)(6) for "failure to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the claim, not the facts supporting it. *Charter One Mortgage Corp. v. Condra*, 865 N.E.2d 602, 604 (Ind.2007). Thus, our review of a trial court's grant or denial of a motion based on Trial Rule 12(B)(6) is *de novo*. *Id.* When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id.* at 605. A complaint may not be dismissed for failure to state a claim upon which relief can be

---

**2.** Count I alleges in part "That Johnson was arrested and held without probable cause and without a valid arrest warrant." Appellant's App. p. 11 (capitalization omitted).

**3.** Count II alleges in part "That Blackwell and Cole did not have probable cause, nor reasonable suspicion, to arrest Johnson, search his home, and to retain or place him in custody." *Id.* (capitalization omitted).

**4.** Count III alleges in part "That the conduct of Defendants caused Johnson extreme em-

barrassment, severe mental anguish, public humiliation and emotional trauma." *Id.* at 12 (capitalization omitted).

**5.** Count IV alleges in part "That Blackwell and Cole intruded upon Johnson's solitude and seclusion when Blackwell and Cole arrested Johnson without probable cause and illegally searched Johnson's home." *Id.* at 13 (capitalization omitted).

granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief. *Id.*

As detailed above, Johnson brings four state law claims in his complaint, namely, civil rights violations, false imprisonment/false arrest, wrongful infliction of emotional distress, and invasion of privacy by intrusion. Johnson, however, does not point to a specific statute of limitations for any of these claims. Rather, he proceeds under the assumption that a two-year statute of limitations applies to all of them. Defendants, on the other hand, argue that the statute of limitations governing injury to person, which is located at Indiana Code § 34–11–2–4, applies to all four counts. We agree with Defendants. Specifically, Indiana Code § 34–11–2–4 provides that "[a]n action for . . . injury to person . . . must be commenced within two (2) years after the cause of action accrues." "In general, the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Filip v. Block*, 879 N.E.2d 1076, 1082 (Ind.2008) (quotation omitted).

We now must determine the accrual date of the causes of action for civil rights violations, false imprisonment/false arrest, wrongful infliction of emotional distress, and invasion of privacy by intrusion. A quick review of Johnson's complaint shows that all of these claims are based upon the search of Johnson's home and his arrest, both of which occurred on February 27, 2003. In *Livingston v. Consolidated City of Indianapolis*, 398 N.E.2d 1302, 1303 (Ind.Ct.App.1979), this Court held that the plaintiff's causes of action for false arrest, false imprisonment, and assault and battery against the City of Indianapolis

and the State of Indiana accrued on the date of the plaintiff's arrest.

More recently, the United States Supreme Court analyzed the accrual date of a § 1983 cause of action for false arrest/false imprisonment (which under Illinois law also had a two-year statute of limitations) in *Wallace v. Kato*, —— U.S. ——, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007), *reh'g denied.* In that case, the police arrested Wallace for murder in 1994. He was tried and convicted, but the charges were ultimately dismissed in April 2002. In April 2003 Wallace filed a § 1983 suit against the City of Chicago and several police officers seeking damages arising from his unlawful arrest. The Seventh Circuit affirmed the district court's grant of summary judgment in favor of the defendants finding that Wallace's § 1983 suit was time barred because his cause of action accrued at the time of his arrest and not when his conviction was later set aside. On appeal, the United States Supreme Court set forth the general rule that the period of limitations begins to run when the alleged false imprisonment ends. *Id.* at 1096. Applying common law tort principles, the Court stated, "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* (citations omitted). Thereafter, unlawful detention forms part of the damages for the entirely separate tort of malicious prosecution. *Id.* That is, if there is a false arrest claim, damages for that claim cover the time of detention up until the issuance of process or arraignment but not more. *Id.* From that point on, any damages recoverable must be based on a malicious prosecution claim rather than on the detention itself. *Id.* As such, the United States Supreme Court held that Wallace's "contention that his

false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when legal process was initiated against him, and the statute would have begun to run from that date, but for its tolling by reason of [his] minority." *Id.* (footnote omitted).

Applying *Livingston* and the common law principles relied upon in *Wallace,* Johnson's cause of action for false imprisonment/false arrest accrued when he was bound over for trial in March 2003, and his causes of action for civil rights violations, wrongful infliction of emotional distress, and invasion of privacy by intrusion accrued when his house was searched and he was arrested in February 2003.[6] Therefore, Johnson had until February or March 2005 to file his complaint in this case. Because Johnson did not file his complaint until November 2006, it is barred by the two-year statute of limitations.

 In order to avoid the statute of limitations bar, Johnson argues that the continuing wrong doctrine applies. The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury. *Garneau v. Bush,* 838 N.E.2d 1134, 1143 (Ind.Ct.App.2005), *trans. denied.* When this doctrine attaches, the statutory limitations period begins to run at the end of the continuing wrongful act. *Id.* In order to apply the

doctrine, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature. *Id.* Specifically, Johnson claims that the continuing wrong ran from the search of his house and his arrest on February 27, 2003, until the indictment against him was dismissed on July 14, 2006, because the detectives provided false testimony throughout the legal proceedings. To show that the wrong was continuing, Johnson relies upon the Seventh Circuit's opinion in his case, where the court noted that although Detective Blackwell testified that he thought Johnson might retrieve a weapon when he walked away from the front door, the district court discredited this statement and concluded that Detective Blackwell did not really fear that Johnson was getting a weapon; rather, the district court determined that Detective Blackwell's "essential motivation" was to prolong the encounter until Johnson consented to a search of his home. *Johnson,* 427 F.3d at 1057.

 However, the doctrine of continuing wrong does not prevent the statute of limitations from beginning to run when the plaintiff learns of facts that should lead to the discovery of his cause of action, even if his relationship with the tortfeasor continues beyond that point. *Garneau,* 838 N.E.2d at 1145. Here, there was only one act that led to Johnson's complaint: the search of his house and his arrest on Feb-

---

6. Still, Johnson, citing *Scruggs v. Allen County/City of Fort Wayne,* 829 N.E.2d 1049 (Ind. Ct.App.2005), *reh'g denied,* argues that the causes of action in this case did not accrue until his conviction was finally reversed. In *Scruggs,* this Court held that the plaintiff was not entitled to damages for false imprisonment because his conviction had not been overturned. *Id.* at 1051. We first note that *Scruggs* addresses damages, not the accrual date for the applicable statute of limitations, and is therefore readily distinguishable. In any event, *Scruggs* relies on *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364,

129 L.Ed.2d 383 (1994), which holds that in order to recover damages for an allegedly unconstitutional conviction or imprisonment, a § 1983 plaintiff must prove that the conviction or sentence has been reversed. *Wallace* clarifies, however, that the *Heck* rule "is called into play only when there exists a conviction or sentence that has *not* been ... invalidated, that is to say, an outstanding criminal judgment." 127 S.Ct. at 1097–98 (quotation omitted). Because that is not the case here, *Scruggs* and *Heck* do not dictate that Johnson's causes of action did not accrue until his conviction was reversed.

ruary 27, 2003. Johnson was immediately aware of the facts surrounding these events, as he filed a motion to suppress less than one month after his arrest. The doctrine of continuing wrong does not toll the statute of limitations in this case.

▉▉▉▉ Johnson next argues that the doctrine of fraudulent concealment tolls the statute of limitations in this case until July 14, 2006, when his indictment was dismissed. Pursuant to Indiana Code § 34–11–5–1, "If a person liable to an action conceals the fact from the knowledge of the person entitled to bring the action, the action may be brought at any time within the period of limitation after the discovery of the cause of action." "The law narrowly defines concealment, and generally the concealment must be active and intentional." *Olcott Int'l & Co. v. Micro Data Base Sys., Inc.,* 793 N.E.2d 1063, 1072 (Ind.Ct.App.2003), *trans. denied.* "The affirmative acts of concealment must be calculated to mislead and hinder a plaintiff from obtaining information by the use of ordinary diligence, or to prevent inquiry or elude investigation. There must be some trick or contrivance intended by the defrauder to exclude suspicion and prevent inquiry." *Id.*

Here, the doctrine of fraudulent concealment does not apply. Johnson was present during the search of his house and his arrest on February 27, 2003. Indeed, Johnson told the detectives to search his house. The detectives concealed nothing from Johnson. If anything, the detectives were less than candid with the district court. Because Johnson was present during the entire encounter on February 27, 2003, he had actual knowledge of the facts and thus was equipped to challenge his unlawful arrest. It is this fact alone that distinguishes Johnson's case from the case upon which Johnson relies on appeal, *Bell v. Milwaukee,* 746 F.2d 1205 (7th Cir.1984)

(concluding that doctrine of fraudulent concealment applied where police officers concealed facts concerning death of Daniel Bell), *overruled on other grounds by Russ v. Watts,* 414 F.3d 783 (7th Cir.2005). Accordingly, the doctrine of fraudulent concealment does not operate to extend the statute of limitations in this case.

As a final matter, we comment upon Johnson's doomsday argument in his brief that

> The net effect of the trial court's ruling is that rouge [sic] police officers can commit a series of improper acts that result in the incarceration of an innocent citizen and not be subject to legal process. The police officers can mask their improper conduct by continuing to deliver false testimony that results in lengthy incarceration and no remedy is ever available.

Appellant's Br. p. 15. We strongly disagree. Defendants such as the ones here can of course be subject to legal process, but plaintiffs must file their complaints within the applicable statute of limitations. There is nothing that prevented Johnson from filing his civil complaint while his criminal case was pending. *See Wallace,* 127 S.Ct. at 1098 ("If a plaintiff files a false arrest claim before he has been convicted ···, it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."). This is especially so given that when the Seventh Circuit remanded Johnson's criminal case in 2004, which was still within the statute of limitations, the court said that it was a "close question" of whether the detectives had reasonable suspicion to seize Johnson. *See Johnson,* 2004 WL 1873217, *4. Because Johnson filed his complaint outside the two-year

statute of limitations, we affirm the trial court's dismissal of his complaint.[7]

Affirmed.

SHARPNACK, J., and BARNES, J., concur.

7. Given this holding, we do not address Defendants' arguments that Blackwell and Cole are improper parties because they were government employees acting within the scope of their employment.