In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2056

CHRISTOPHER PARISH, et al.,

*Plaintiffs-Appellants,*

*v.*

CITY OF ELKHART, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 07-cv-452—**Rudy Lozano,** *Judge.*

ARGUED APRIL 9, 2010—DECIDED JULY 30, 2010

Before POSNER, FLAUM and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* In this case, we are confronted with the question of when claims of police misconduct resulting in false arrest, false imprisonment, and intentional infliction of emotional distress ("IIED"), accrue for the purpose of the general two-year statute of limitation in Indiana. After serving eight years of a thirty-year prison sentence for attempted murder, plaintiff-appellant, Christopher Parish, was released from prison

and the charges were dropped. After his release, Parish filed a complaint against the City of Elkhart and several officers who worked the case. Parish brought two claims under § 1983 for violations of his constitutional rights and three claims for violations of his rights under state law. The district court dismissed all of Parish's state law claims on the ground that they were barred by Indiana's statute of limitations. Inherent in that decision was the ruling that the claims accrued at the time of arrest and at the time Parish was held over for trial rather than at the time Parish was exonerated. Parish appeals. We affirm the district court's dismissal of the false arrest and false imprisonment claims. We reverse the district court's dismissal of Parish's claim for IIED.

## I. Background[1]

On the evening of October 29, 1996, Michael Kershner was shot in the abdomen outside his mother's home in Elkhurst, Indiana. When the police arrived at the scene, Kershner's family told the officers that the shooting occurred inside the home during a home invasion. There was no evidence of a home invasion because none took place; the shooting occurred in a parking lot during a drug deal. Still, despite a lack of corroborating evidence the police pursued the home invasion theory. Parish was arrested and tried on the theory that he was one of

---

[1] Because this appeal stems from a motion to dismiss, we take the facts from the complaint as true. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001).

two individuals who broke into the home and shot Kershner. At trial, Parish introduced evidence that he was in Illinois at the time of the shooting and therefore could not have committed this crime. Parish did not challenge the state's evidence regarding the location of the shooting or the circumstances surrounding the shooting. The jury found Parish guilty and the court sentenced Parish to thirty years in prison.

In 2006, after eight years of post-conviction litigation, Parish's conviction was vacated. During the post-conviction litigation, evidence came out that the shooting occurred outside of the home and that the police coerced several witnesses into identifying Parish as the shooter. The Indiana Court of Appeals reversed the denial of Parish's petition for post-conviction relief and the state then dropped the charges. Shortly thereafter, Parish, Parish's children, Parish's fiancée, and Parish's mother filed suit against the City of Elkhart and three former officers of the city's police department. The key factual allegation in the complaint is: "Almost immediately after the Kershner shooting, defendants Rezutko, Abrose, Cutler, and the other law enforcement defendants determined to falsely implicate Parish and to build a false case against him, with the aim of securing his false arrest and then his false imprisonment." (Complaint, ¶ 16.) The complaint further alleges that to accomplish these goals, "the officers used improper and suggestive interview and photo identification techniques, manipulated witnesses, threatened or coerced witnesses, engaged in staging a crime scene in Kershner's mother's apartment, and further fabricated and destroyed evidence."

(Complaint, ¶ 17.) Crucial to our analysis, the complaint also alleges that, in carrying out these acts, "the law enforcement defendants kept secret and failed to disclose what they had done or how they had done it." (Complaint, ¶ 20.)

Parish's complaint alleged two § 1983 claims (denial of the right to a fair trial and false arrest) and four supplemental state law claims (false arrest, false imprisonment, IIED, and malicious prosecution). Defendants moved to dismiss all of the claims. Parish did not challenge the motion to dismiss the § 1983 false arrest claim or the state law malicious prosecution claim. The district court denied the motion to dismiss with regard to the § 1983 denial of a fair trial claim. The district court granted the motion to dismiss with regard to the state law claims for false arrest, false imprisonment, and IIED on the ground that they are time-barred. Parish initially appealed the dismissal of all state law claims.[2] However, at oral argument Parish conceded that the district court properly found that the claims for false arrest and false imprisonment were timed-barred. Therefore, the only remaining issue in this appeal is whether the district court properly dismissed the IIED claim.

_____

[2] Because the district court's September 5, 2008, Order did not dispose of the entire case—at least one § 1983 claim remained for further adjudication in the trial court—the defendants sought certification of the Order dismissing the state law claims as a final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. The district court granted the certification.

## II. Discussion

We review an appeal from a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) de novo. *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001). When reviewing a motion to dismiss, we accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Id.* Whether the claim for IIED is barred by Indiana's two-year statute of limitations, which would make dismissal of the claim appropriate, is the only issue on appeal. Because this is a state law claim, we apply Indiana law regarding the statute of limitations and any rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel. *Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006). The parties agree that the timeliness of Parish's claim is governed by Indiana Code 34-11-2-4, which requires that an action be brought within two years of the date on which the action accrued. If the claim accrued at the time of arrest, then this claim is time-barred. If the claim accrued at the time Parish was exonerated, this claim is not time-barred. We take our inquiry in two steps. First, we determine, from a purely legal standpoint, when a claim for IIED accrues under Indiana law. Then we turn to the specific facts of this case and apply that rule.

## A. The Legal Principles Governing When a Claim for IIED Accrues

There are four cases that are directly relevant to the analysis of when a claim for IIED accrues under Indiana

law. Two cases come from the Supreme Court of the United States: *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Wallace v. Kato*, 549 U.S. 384 (2007). Two cases come from the Indiana courts: *Scruggs v. Allen County/City of Fort Wayne*, 829 N.E.2d 1049 (Ind. Ct. App. 2005), and *Johnson v. Blackwell*, 885 N.E.2d 25 (Ind. Ct. App. 2008).[3] We review these cases in chronological order because each case is informed by the preceding cases.

In *Heck v. Humphrey*, the Supreme Court addressed the issue of whether an individual convicted of a state crime could bring a § 1983 claim against the prosecutors and investigators involved with the state conviction for engaging in an "unlawful, unreasonable, and arbitrary investigation" leading to the plaintiff's arrest, destroying exculpatory evidence, and employing an illegal voice identification procedure at trial, while the state conviction was still valid. 512 U.S. 477. The Court found that the petitioner could not pursue the § 1983 action because the § 1983 action served as a collateral attack on the conviction through a procedure other than habeas corpus. *Id.* at 485. To arrive at this holding, the Court specifically analyzed the claims in the complaint and found that the claims directly attacked the validity of the conviction. *Id.* at 486-87. The Court analogized the

---

[3] Although the Indiana Supreme Court has not directly ruled on this issue, we find the decisions of the Indiana Court of Appeals on this issue persuasive authority on the approach the high court would take. *See Maher v. Harris Trust and Savings Bank*, 506 F.3d 560 (7th Cir. 2007).

claims to the common law tort of malicious prosecution. *Id.* at 484. Following the common law principle that a plaintiff cannot bring a claim for malicious prosecution until the prior criminal proceedings have been terminated in his favor, the Court found that the plaintiff in *Heck* could not bring the claims in his complaint until his conviction had been overturned. *Id.* The Court carefully limited its holding to claims that directly attack the validity of the conviction:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment

against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to suit.

*Heck*, 512 U.S. at 486-87. Under the *Heck* framework, a claim that directly attacks the validity of a conviction cannot accrue until after the conviction has been terminated in a manner favorable to the plaintiff.

The Indiana courts adopted the *Heck* framework in *Scruggs*, 829 N.E.2d 1049. In *Scruggs*, several criminal defendants brought a civil action against the state and a number of state actors alleging that their imprisonment violated the state constitution because they were not indicted by a grand jury. 829 N.E.2d at 1050. The Indiana Court of Appeals found that the complaint failed to state a claim for which relief could be granted. *Id.* at 1052. The *Scruggs* Court based its holding on two grounds: (1) there was no violation of the state constitution because the state constitution did not require that an individual be indicted through the grand jury process rather than on information, and (2) adopting *Heck*, the plaintiffs could not move forward in their claims for false imprisonment because their claims would directly attack the validity of their convictions and they could not show that their convictions had been overturned or dismissed. 829 N.E.2d at 1051.

Following *Heck* and *Scruggs*, both the Supreme Court and the Indiana Court of Appeals revisited the issue of claim accrual for individuals with claims of false arrest and other claims associated with overturned convictions. In *Wallace v. Kato*, the Supreme Court found that a claim

for false arrest or false imprisonment accrues at the time the individual is brought before a magistrate or arraigned on charges. 549 U.S. 384. The Court applied federal common law to the question of claim accrual because the plaintiff brought the claim in a § 1983 action. *Id.* at 388. Relying on federal common law, the Court held that the claim cannot accrue until the tort of false imprisonment ends. *Id.* The Court recognized that this rule may be informed by "the reality that the victim may not be able to sue while he is still imprisoned." *Id.* at 390. Then, the Court turned to the question of when false imprisonment ends:

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process—when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process. . . . Thus, petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected. It ended much earlier, when the legal process was initiated against him, and the statute would have begun to run from that date, but for its tolling by reason of petitioner's minority.

*Wallace*, 549 U.S. at 389.

The Court distinguished *Wallace* from *Heck* on the ground that the claim in *Heck* was analogous to the tort to

malicious prosecution rather than false imprisonment. *Id.* While a claim of malicious prosecution would inevitably impugn a conviction, a claim of false imprisonment only impugns an anticipated future conviction because the claim ends well before the conviction occurs (or before the plaintiff knows whether charges will even be pursued). Our Circuit recently had cause to interpret *Wallace* in *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010). In *Evans* we characterized *Wallace* as holding "a claim that accrues before a criminal conviction may and usually must be filed without regard to the conviction's validity." *Id.* at 363. This description of the holding in *Wallace* hones in on the factual distinction between *Heck* and *Wallace*: the tort of false arrest is complete, and therefore begins to accrue, once the individual is brought before a magistrate; the tort of malicious prosecution is not complete until a conviction occurs and that conviction has been overturned, and therefore the statute of limitations for malicious prosecution does not begin to accrue until that time. *Id.*

The Indiana Court of Appeals again addressed the issue of claim accrual in *Johnson v. Blackwell*. 885 N.E.2d 25. The court in *Johnson* interpreted *Wallace* in much the same way we interpreted *Wallace* in *Evans*. In *Johnson*, the plaintiff-appellate, Jon S. Johnson, filed a complaint against several members of the Madison County Sheriff's Department, alleging civil rights violations, false imprisonment, false arrest, wrongful infliction of emotional distress, and invasion of privacy by intrusion. 885 N.E.2d at 28. Although Johnson brought the civil suit in Indiana state court, the underlying criminal charge was federal.

Johnson had been arrested and convicted for possession with intent to distribute crack cocaine. The arrest and conviction were the result of an anonymous tip that led the officers (the defendants in the civil suit) to Johnson's house. The officers went to Johnson's house without a search warrant. At the house, the detectives threatened Johnson until he allowed them into the home to search. The officers found drugs in the home and federal charges were brought. Johnson was convicted. Our Court vacated the conviction and ordered the case remanded to the district court for an evidentiary hearing on whether the detectives lacked reasonable suspicion to seize Johnson. The district court found that the officers did lack reasonable suspicion and the indictment was dismissed. Johnson's complaint against the officers focused exclusively on the officers' threats to enter the house and their actions when they searched Johnson's house and arrested him without probable cause. Johnson brought his claim more than two years after the search of his home. The Indiana Court of Appeals found that all of the claims were time-barred. *Id.*

The *Johnson* court determined that Indiana's two-year statute of limitations, I.C. 34-11-2-4, governed and then discussed when the claims accrued. *Id.* at 30. The court adopted the rule from *Wallace v. Kato* for the false arrest/false imprisonment claims and found that the period of limitations began to run when the alleged false imprisonment ended—at the time Johnson was arraigned. *Id.* at 30. In addressing the other claims (civil rights violations, wrongful infliction of emotional distress, and invasion of privacy by intrusion), the court

found that they accrued when the house was searched. *Id.* at 31. Notably, in addressing these claims the court did not apply the same bright-line rule from *Wallace* that accrual happens upon arraignment. Instead, the court applied the standard discovery rule for accrual and considered when the tort occurred and when Johnson knew, or should have known, about the tort. *Id.* The only claimed tortious conduct occurred during the time of the illegal search and Johnson was present for the entire duration of the tortious conduct. Therefore, the court found that those claims accrued on the day that the search occurred and Johnson could not benefit from the tolling doctrine of continuing wrong. *Id.* at 32.

Defendants claim that the Indiana Court of Appeals in *Johnson* overruled their earlier decision in *Scruggs* to adopt the *Heck* reasoning. That is not true. Johnson's claims did not attack the validity of the conviction. Johnson claimed that the wrongful conduct of the defendant officers was their aggressive behavior during the search of his house. These allegations do not amount to a challenge to the conviction.[4] As such, Johnson's complaint did not invoke the *Heck* framework and we do not read the *Johnson* opinion to be a recantation of Indiana's prior

---

[4] The Supreme Court in *Heck* envisioned claims such as those in *Johnson* and specifically stated that the Heck reasoning did not reach those claims. *Heck*, 512 U.S. at 487 n.7 ("For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction.").

adoption of *Heck*. Instead, we read these cases to rely on the same general distinction we relied on in *Evans*: whether the claimed tort occurred and was completed before conviction—as would be the case with a claim for false arrest, false imprisonment, or IIED resulting from offensive behavior at the time of arrest—or the claimed tort was not complete prior to conviction—as would be the case with a claim for malicious prosecution or IIED resulting from actions that lead to a false conviction. If the claimed tort occurred and was completed before the conviction, such as the claims in *Johnson*, the claims accrue immediately upon the completion of the tort. If the claimed tort continued through, or beyond, the point of conviction, the court must ask whether the claims would directly implicate the validity of the conviction. If the claims would not directly implicate the validity of the conviction, the court should follow the standard discovery rule applied in Indiana: The claim accrues at the time the individual knew or should have known of the tort. *See Johnson*, 885 N.E.2d at 30 (citing *Filip v. Block*, 879 N.E.2d 1076, 1082 (Ind. 2008)). If the claim would directly implicate the validity of the conviction, then *Heck* and *Scruggs* come into play and the claim does not accrue until the conviction has been disposed of in a manner favorable to the plaintiff.

### B. Applying the Rule for IIED Claim Accrual to Parish's Claims

To prevail on a claim for IIED under Indiana law, Parish must show that the defendants, by extreme or outrageous

conduct, intentionally or recklessly caused him severe emotional distress. *See Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991). Parish claims that officers created a fake crime scene, fabricated evidence, tampered with evidence, destroyed or withheld exculpatory evidence, either actively suborned or deliberately turned a blind eye to perjured testimony, and testified falsely under oath, leading to his wrongful conviction. Parish also claims that the officers covered up their actions to maintain the continued incarceration of Parish. First, looking only at the actions of the officers, it is clear that this tort was not completed prior to the conviction. The officers allegedly took steps through all stages of the investigation and trial that cumulatively amounted to the tort of IIED. Additionally, the conviction was an essential piece of this tort because it was the wrongful conviction that led to the emotional strain and mental anguish that Parish faced. Therefore, unlike the claimed tortious conduct in *Johnson*, which was complete immediately after the search occurred, Parish's claim of IIED was not complete prior to the time of conviction because the conviction was the crux of the claim.

Turning to the second part of the analysis, we consider whether the facts alleged to support Parish's claim of IIED directly attack the validity of the conviction. The *Heck* Court was explicitly concerned about opening up avenues to challenge a conviction through means other than the state or federally proscribed channels, such as habeas corpus. *Heck*, 512 U.S. at 482. At the heart of Parish's complaint is a claim that the defendant officers fabricated an entire case against him that led to his

wrongful conviction. The factual allegations that Parish was innocent and that the officers committed perjury, falsified evidence, coerced witnesses to commit perjury, and withheld exculpatory evidence are all challenges to the conviction that would only have been proper while the conviction was still outstanding if Parish brought them through proscribed post-conviction relief channels. Therefore, under Indiana's adoption of *Heck*, Parish could not have brought these claims until his conviction was disposed of in a manner favorable to him. Parish brought his claim within two years of when the claim accrued upon his exoneration, thereby making the claim timely.

## III. Conclusion

For the reasons discussed above, we REVERSE the district court's dismissal of Parish's IIED claim. Also, based on Parish's concession at oral argument, we AFFIRM the district court's dismissal of the false arrest and false imprisonment claims.