In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 12-3742

RONALD OLSON and CINDY OLSON,

*Plaintiffs-Appellants,*

*v.*

CHAMPAIGN COUNTY, ILLINOIS, et al.

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Central District of Illinois.
No. 11-2147 — **Harold A. Baker**, *Judge*.

_____

ARGUED OCTOBER 31, 2014 — DECIDED APRIL 30, 2015

_____

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiffs Ronald and Cindy Olson appeal the district court's dismissal of their civil suit challenging the arrest of Mr. Olson by local officials in Illinois. The Olsons allege that two police detectives and a prosecutor violated Mr. Olson's Fourth Amendment rights by causing his arrest without probable cause. The district court dismissed

the suit for failure to state a claim, finding that the prosecutor was entitled to absolute prosecutorial immunity and the detectives were entitled to qualified immunity because they had a warrant for Olson's arrest. The district court then declined supplemental jurisdiction over state law claims arising out of the same events.

We reverse the dismissal of the federal claims and remand for the district court to consider both the federal and state law claims. The prosecutor is not entitled to absolute immunity because the plaintiffs allege he swore to the truth of facts to obtain the arrest warrant for Olson. In swearing to facts, he was acting as a witness, not as an advocate of the state, and so is not protected by absolute prosecutorial immunity. See *Kalina v. Fletcher*, 522 U.S. 118, 129–30 (1997). Neither the detectives nor the prosecutor are entitled to dismissal on qualified immunity. The allegations of the complaint permit the reasonable inference that the two detectives, the prosecutor, or all three gave false information to the state judge who issued the warrant for Olson's arrest. The plaintiffs allege that the detectives exhaustively investigated the theft of a trailer and lawn mowers but found no evidence or witnesses that linked Olson to the crime. The fact that Olson was arrested anyway on a warrant based on information from the defendants plausibly suggests that the defendants gave false information, and they are not entitled to qualified immunity if they lied to obtain the arrest warrant.

I.   *Factual and Procedural History*

We recount the facts as alleged in the second amended complaint because we must accept the plaintiffs' allegations as true when reviewing a dismissal under Federal Rule of Civil Procedure 12(b)(6). *Parish v. City of Elkhart*, 614 F.3d 677,

679 (7th Cir. 2010); *Parish v. City of Chicago*, 594 F.3d 551, 552 (7th Cir. 2009).

A. *Investigation and Olson's Arrest*

This suit stems from an exhaustive police investigation into the burglary of Marie Buhr's property in Royal, Illinois, a town located in Champaign County. On October 6, 2008, Marie Buhr and her grandson, Christopher Buhr, reported to the Champaign County Sheriff that a red trailer and lawn mowers were stolen from the Buhr property.

Also in October 2008, plaintiffs Ronald and Cindy Olson noticed that their neighbor, Vilven Tire Company, had placed an eight-foot-long trailer on the Olsons' property just outside Royal. Mr. Olson concluded that the trailer was abandoned. The trailer was deteriorated and had no lights or license plate. Olson planned to fix up the abandoned trailer to give to his daughter and son-in-law, Brandy and Brent Vinson. He painted the trailer and placed brackets and anchor boards on it. He left the trailer on his property where it could be seen from the road. Three days after he completed these repairs, the trailer disappeared. The Olsons did not file a police report because they did not care if someone took it.

On October 23, 2008, a detective working for the Champaign County Sheriff, defendant David Sherrick, discovered a black trailer with a flat tire abandoned in a ditch on a country road near Ogden, Illinois. Sherrick took fingerprint samples from the trailer. In a police report, Sherrick wrote that he observed tire marks that looked as if a riding lawn mower had been transported on the trailer. He also saw bean stalks on the trailer. Sherrick concluded the trailer had been driven

through a field to transport the lawn mowers that were reported stolen from the Buhr property.

Another investigator in the Sheriff's office ran the fingerprints from the trailer through a database but found no match, which was documented in a December 4, 2008 report. Sherrick nevertheless suspected that Ronald Olson had stolen the trailer and lawn mowers, so on June 3, 2009 he applied for and received search warrants that authorized the collection of DNA samples and fingerprints from Ronald Olson, as well as a search of the Olsons' property. Sherrick searched the property with defendant Stuart Shaw, another detective working for the Champaign County Sheriff.

The searches allegedly yielded nothing to confirm Sherrick's suspicions. A June 9, 2009 laboratory report by the Illinois State Police found no match between Ronald Olson's DNA or fingerprints and the samples collected from the trailer or any other Buhr building. Even after the searches, there was a "lack of any forensic evidence [or a] statement of any witness connecting Ron Olson in [any way] to the Buhrs, their trailer, their property or any other matter that would lead a reasonable police officer to believe there was probable cause to believe Ron Olson had committed a crime."

Despite the lack of any evidence implicating Olson, Detectives Sherrick and Shaw allegedly told an assistant state's attorney, defendant Steven Ziegler, that Ronald Olson should be arrested and charged for stealing the trailer and lawn mowers. The Olsons allege that "Officers Sherrick and Shaw provided false statements of probable cause for charges and the arrest of Ron Olson to Assistant State's Attorney Steven Ziegler [that] resulted in his filing the information which required the arrest of Ron Olson."

On June 11, 2009, Ziegler filed an information in state court charging Ronald Olson with felony burglary of the Buhr property. Ziegler had no personal knowledge of the investigation into the burglary. He swore that the facts set forth in the information were true, relying on statements made by Sherrick and Shaw. The complaint alleges that those statements were false. The information sets forth the charges against Mr. Olson and also contains a section where a person signs to swear to the truth of the facts in the information:

> The State's Attorney of said County charges: That on or about OCTOBER 6, 2008, in Champaign County, RONALD L. OLSON committed the offense of BURGLARY CLASS 2 FELONY in that the said defendant, or one for whose conduct he is legally responsible, without authority, knowingly entered a building of Marie Buhr, located at [address], Royal, Illinois, with the intent to commit therein a theft, in violation of 720 Illinois Compiled Statutes 5/19-1(a). s/ Julia R. Rietz, State's Attorney

> The undersigned, being duly sworn, states upon information and belief that the facts set forth in the foregoing information are true. s/ Illegible, Asst. State's Attorney, SWORN TO before me June 11, 2009, s/ Linda S. Frank, Circuit Clerk

The signature of the prosecutor swearing to the truth of the facts in the information, which is marked "Illegible" in the certified copy in the record in this case, belongs to Ziegler.[1]

Also on June 11, 2009, a state judge issued a warrant for the arrest of Olson. That warrant is reproduced in its entirety here, omitting only certain identifying personal information:

> IN THE CIRCUIT COURT OF CHAMPAIGN COUNTY, ILLINOIS
>
> THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT IN CHAMPAIGN COUNTY, STATE OF ILLINOIS TO: ANY PEACE OFFICER OF THE STATE OF ILLINOIS
>
> **WHEREAS**, a verified information by <u>Champaign County State's Attorney</u> has been made before me that DEFENDANT: Ronald L. Olson
>
> …
>
> At and within the County of Champaign in the State aforesaid, on or about <u>October 06, 2008</u>, did commit the offense of <u>Burglary - a class 2 felony</u> in violation of <u>720</u> Illinois Compiled Statutes <u>5/19-1(a)</u>.
>
> **YOU ARE COMMANDED**, by order of said Court to arrest the said <u>Ronald L. Olson</u> and

---

[1] As a general rule, we may take judicial notice of public records not attached to the complaint in ruling on a motion to dismiss under Rule 12(b)(6). E.g., *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); see also *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986). The defendants filed the information and arrest warrant in the district court as exhibits supporting their motion to dismiss. Both documents are certified copies of public state court records.

> bring him/her forthwith before me, or in case of my absence or inability to act, before the nearest Associate Circuit Judge or Magistrate within the said County, to answer said complaint and be dealt with according to law.
>
> Bail for the foregoing offense(s) hereby fixed at $50,000.00.
>
> Issued this 11th day of June, A.D. 2009, in the County of Champaign, State of Illinois.
>
> s/ Richard P. Klaus, Judge of said Circuit Court/Associate Circuit Judge

Olson was arrested on June 11, 2009. The complaint alleges Sherrick and Shaw are liable for "obtaining the arrest" of Ronald Olson. Fifteen months later, on September 21, 2010, the circuit court dismissed the charge against Olson on motion of the prosecutor.

B. *Procedural History of the Federal Civil Case*

The Olsons filed suit on June 6, 2011. They sued Detectives Sherrick and Shaw in their individual capacities; Dan Walsh, Sheriff of Champaign County, in his individual and official capacities; Assistant State's Attorney Steven Ziegler in his individual capacity; and Champaign County itself.

The Olsons alleged that the arrest of Ronald Olson violated his Fourth Amendment right to be free from unreasonable seizure. This federal claim against local officials was brought under 42 U.S.C. § 1983 and was asserted against Sherrick and Shaw for providing false information that led to the arrest and Ziegler for attesting to the truth of the facts alleged in the information. Plaintiffs also asserted state law claims for mali-

cious prosecution and false arrest against Sherrick, Shaw, and Ziegler for their roles in the arrest, as well as against Sheriff Walsh based on *respondeat superior* liability for the actions of Sherrick and Shaw. Champaign County was joined as a necessary party because it is obliged by law to pay judgments against employees acting within the scope of their employment. See 745 Ill. Comp. Stat. 10/9-102. The Olsons sought damages for Mr. Olson's brief detention, the bond restrictions requiring him to stay in Illinois, and Cindy Olson's inconvenience in being unable to travel outside Illinois with her husband.[2]

The district court dismissed the Olsons' first amended complaint for failure to state a claim but granted plaintiffs leave to file another. The district court then dismissed the second amended complaint as well and entered final judgment for the defendants.

The district court dismissed all claims for five different reasons. First, the court concluded that Sherrick and Shaw were entitled to qualified immunity because they arrested Olson pursuant to a warrant issued by a state judge. Second, the court concluded that prosecutor Ziegler was entitled to absolute immunity because he was acting in his capacity as an ad-

---

[2] When the Olsons first filed suit, they joined their claims based on the arrest of Ronald Olson with the claims of his daughter and son-in-law, Brandy and Brent Vinson. The Vinsons sued various local officials and local governments for the allegedly unlawful search of their property in Vermilion County, which adjoins Champaign County. That search took place on June 4, 2009, after the search of the Olson property. On February 27, 2012, the district court severed the claims of the Vinsons and Olsons into two separate lawsuits. For our disposition of the Vinsons' claims, see *Vinson v. Vermilion County*, 776 F.3d 924 (7th Cir. 2015).

vocate for the state when he signed and filed the charging information. Third, the court found the complaint failed to state a federal claim against Sheriff Walsh because a supervisor is not liable under § 1983 for a subordinate's violation of a person's constitutional rights. E.g., *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Fourth, the plaintiffs failed to state a viable *Monell* claim against Champaign County because they did not point to a municipal policy or practice (or person with policymaking authority) that caused the constitutional injury. See *Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978) (explaining when a local government may be liable under § 1983). Finally, after finding no valid federal claims, the court declined to accept supplemental jurisdiction over the state law false arrest and malicious prosecution claims. The court entered final judgment in favor of the defendants. This appeal followed.

II. *Analysis*

We review *de novo* the district court's dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). E.g., *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). We reverse the dismissal. The complaint plausibly alleges that the defendants unlawfully caused the arrest of Ronald Olson. At this stage of the proceedings, Sherrick and Shaw are not entitled to qualified immunity, and Ziegler is not entitled to absolute immunity or qualified immunity.

A. *Legal Standard*

To survive a motion to dismiss, the plaintiffs' complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While specific facts are not necessary, *Erickson v. Par-*

*dus*, 551 U.S. 89, 93 (2007) (per curiam), the complaint must "'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

We must determine if the allegations in the complaint state a plausible claim for relief. *Twombly*, 550 U.S. at 570; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level … ." *Twombly*, 550 U.S. at 555; see also *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (plausibility requirement "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations"), quoting *Twombly*, 550 U.S. at 556.

These factual allegations must be more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. We "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted), quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986). This is a fine line, though, and it is appropriate to give plaintiffs a chance to amend a complaint to provide more factual detail, as the district court did here after its first dismissal. See, e.g., *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success."), citing *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 556. A claim should survive a Rule 12(b)(6) motion to dismiss if the complaint contains well-pled facts—that is, not just legal conclusions—that permit the court to infer more than the mere possibility of misconduct. *Iqbal*, 556 U.S. at 679. In deciding or reviewing a Rule 12(b)(6) motion, we do not ask did these things happen; instead, "the proper question to ask is still '*could* these things have happened." *Carlson v. CSX Transportation, Inc.*, 758 F.3d 819, 827 (7th Cir. 2014), quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

B.  *Claim Against Detectives Sherrick and Shaw*

The plaintiffs claim that detectives Sherrick and Shaw are liable for arresting Ron Olson without probable cause in violation of the Fourth Amendment. The district court dismissed this claim after concluding the officers could not be liable because they had a warrant for the arrest and so were entitled to qualified immunity.

We evaluate claims for qualified immunity by the standard of objective reasonableness. *Malley v. Briggs*, 475 U.S. 335, 344 (1986); see also *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982) (holding that officials who act objectively reasonably, by reference to clearly established law, are entitled to qualified immunity). This is the same standard that applies in deciding whether to suppress evidence in a criminal trial obtained through an invalid warrant, and precedents regarding suppression rulings therefore provide guidance to the qualified immunity inquiry for civil § 1983 suits. *Malley*, 475 U.S. at 344, citing *United States v. Leon*, 468 U.S. 897 (1984).

Officers do not act reasonably if they intentionally or reck-lessly provide false information to obtain a warrant. *Leon*, 468 U.S. at 926; see also *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008) (holding that a criminal defendant can rebut the presumption that an officer is acting in good faith by ap-plying for a warrant if "the officer was dishonest or reckless in preparing the affidavit"). A police officer is not entitled to qualified immunity for submitting "an affidavit that con-tained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements." *Lawson v. Veruchi*, 637 F.3d 699, 704 (7th Cir. 2011) (internal quotation marks omitted), quot-ing *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985). This stand-ard applies to officers "who provided information material to the probable-cause determination." *Leon*, 468 U.S. at 923 n.24.

The plaintiffs' allegations allow a reasonable inference that Sherrick and Shaw provided false information to obtain the warrant and so are not entitled to qualified immunity. The plaintiffs allege that Sherrick and Shaw lied to Ziegler about having probable cause to arrest Mr. Olson. The complaint states that "Officers Sherrick and Shaw provided false state-ments of probable cause for charges and the arrest of Ron Ol-son to Assistant State's Attorney Steven Ziegler [that] resulted in his filing the information which required the arrest of Ron Olson."

The defendants respond that this is a bare legal conclusion and fails to give them notice of the claim against them in light of the pleading requirements set out in *Twombly* and *Iqbal*. They suggest that the plaintiffs were required to specify what statements were false and led to Olson's arrest. But the Olsons

alleged all of the facts they could reasonably be expected to know and have provided much more detail than the bare legal conclusion that Sherrick and Shaw "provided false statements of probable cause."

Plaintiffs' "pleading burden should be commensurate with the amount of information available to them." *Bausch*, 630 F.3d at 561 (citation and internal quotation marks omitted). It is unreasonable to require plaintiffs to plead the specific statements with more particularity when they have no knowledge of the specific falsehoods and can learn of them only through discovery. The Olsons do not know what false information was the purported basis for the arrest warrant because the warrant itself is so conclusory. It refers only to an information with the conclusory allegation that Ronald Olson committed burglary. The well-pled facts in the complaint make it reasonable to expect that discovery will reveal evidence about the precise statement that the Olsons contest is false and that is all that is required at this stage. See *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (complaint is plausible if it contains facts that "raise a reasonable expectation that discovery will reveal evidence" supporting the allegations), quoting *Twombly*, 550 U.S. at 556.

The complaint recounts in detail the investigation leading up to Mr. Olson's arrest and the absence of evidence implicating him in any theft of the lawn mowers and trailer. Viewed as a whole, the complaint supports a plausible inference that Sherrick and Shaw lied about the factual basis for the probable cause to arrest Olson. See *Twombly*, 550 U.S. at 555–56.

The Olsons allege that every step of Sherrick and Shaw's extensive investigation failed to yield any evidence that Mr. Olson was involved in the theft of the trailer and lawn mow-

ers. The officers found an abandoned trailer that they believed was the trailer stolen from the Buhrs. They took fingerprint samples from that trailer, had the samples analyzed, and found no match in their database. The officers then obtained a search warrant for the Olson residence as well as for Mr. Olson's DNA and fingerprints. They executed both searches but allegedly found nothing linking Olson to the stolen trailer. Olson's DNA and fingerprints did not match samples collected from the abandoned trailer or samples from the Buhr property. And the search of the Olson residence also turned up nothing implicating Mr. Olson in the theft or even linking him to the Buhr property, the scene of the crime. The Olsons also allege that the police did not have any statements from witnesses that implicated Ron Olson.

In short, the Olsons allege in detail that Sherrick and Shaw's unusually elaborate investigation of the theft of a trailer revealed no evidence that Mr. Olson had anything to do with it. These well-pled facts permit the reasonable inference that Sherrick and Shaw knew no facts that would support probable cause to arrest Olson. And yet they allegedly gave statements to Ziegler that provided the factual basis for his arrest. We can draw the reasonable inference from these allegations that whatever Sherrick and Shaw said to Ziegler, it included false information that led to the unlawful arrest of Ronald Olson.

The defendants rely heavily on *Burton v. City of Franklin*, No. 1:11-cv-00267-JMS-TAB, 2011 WL 2938029 (S.D. Ind. July 18, 2011), to argue that plaintiffs' complaint is deficient, and we find it useful to compare the Olsons' complaint to the complaint in that case. In *Burton*, the district court dismissed the plaintiffs' complaint because the allegation that a search

warrant was "[b]ased upon false information" provided by police officers was conclusory and not supported by well-pled facts that would give the defendants notice of the claim. *Id*. at *4–5. The problem with the *Burton* complaint was that all the facts alleged showed that the police actually did have probable cause. Before requesting the search warrant, two police officers had monitored an informant who made controlled drug buys at Burton's house. *Id*. at *2. Based on that allegation, the district court concluded that the search warrant for the house had been supported by probable cause. The only possible "false information" provided by the police was an overstatement of the quantity of drugs bought by the informant. *Id*. at *5. But even that inference—itself "a strained reading of the Complaint"—was not sufficient to state a claim for a wrongful search because the facts in the complaint establish that the police had probable cause to seek the search warrant even if the quantity of drugs was exaggerated. *Id*. None of the alleged facts could support a reasonable inference that the defendants had violated any law, so the court had no choice but to dismiss the complaint for failure to state a claim. *Id*.

In contrast to the *Burton* complaint, the complaint here alleges facts that Sherrick and Shaw investigated Ronald Olson but turned up no evidence linking him to the crime. Yet the officers nevertheless told prosecutor Ziegler that they had probable cause to believe Olson had stolen the trailer and lawn mowers, and Olson was arrested for burglary. These facts permit the reasonable inference that defendants intentionally or recklessly caused his arrest without probable cause. Viewing the complaint as a whole, the Olsons have provided much more than the "mere allegation that a search warrant [was] based on 'false information.'" *Burton*, 2011 WL

2938029, at *4. The factual allegations in the Olson complaint state a plausible claim against detectives Sherrick and Shaw for false arrest.

C. *Claim Against Prosecutor Ziegler*

The plaintiffs also alleged that prosecutor Ziegler is liable for Olson's false arrest because he verified that the allegations in the charging information were true and therefore was acting as a witness. Ziegler protests that he is entitled to absolute immunity because he was acting as prosecutor in signing and filing the information to initiate the prosecution of Olson for burglary. Both sides agree that courts conduct a functional analysis to determine if a prosecutor has absolute immunity because he is entitled to absolute immunity only for conduct that relates to his role as an advocate for the state. See *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993); *Burns v. Reed*, 500 U.S. 478, 486 (1991). A prosecutor's immunity turns on "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988).

The question of how to categorize Ziegler's conduct is controlled by *Kalina v. Fletcher*, 522 U.S. 118, 120 (1997), where the Court examined whether a prosecutor was entitled to absolute prosecutorial immunity for "making false statements of fact in an affidavit supporting an application for an arrest warrant." Prosecutor Kalina had initiated a criminal proceeding against Fletcher by filing three documents in state court. Two were unsworn pleadings: an information charging Fletcher with burglary and a motion for a warrant for his arrest. The third document was an affidavit that summarized the evidence supporting the charge—a "Certification for Determination of Probable Cause" required by state law to support the arrest warrant. The prosecutor "personally vouched

for the truth of the facts set forth in the certification under penalty of perjury." *Id*. at 120–21. Fletcher alleged that the prosecutor's affidavit contained inaccurate statements, which caused him to be arrested and jailed in violation of the Fourth Amendment.

The Court ruled that the prosecutor was entitled to absolute immunity for filing the information and motion for the arrest warrant but could be sued for personally swearing to the truth of the facts in the supporting affidavit. *Id*. at 129–31. In executing the certification under penalty of perjury, she acted as a complaining witness and not as a lawyer:

> Testifying about facts is the function of the witness, not of the lawyer. No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause. Even when the person who makes the constitutionally required "Oath or affirmation" is a lawyer, the only function that she performs in giving sworn testimony is that of a witness.

*Id*. The prosecutor in *Kalina* was performing essentially the same function as police officers who obtain a warrant by swearing to false information, and police officers can be sued for such actions under *Malley v. Briggs*, 475 U.S. 335 (1986). See *Kalina*, 522 U.S. at 122.

Employing the functional approach and applying the teachings of *Kalina* here, we conclude that Ziegler is not entitled to absolute immunity. He performed the same function as a police officer witness when he swore to facts. A police

officer witness would not be entitled to absolute immunity for swearing to false information, so neither is Ziegler. His signature is below the following statement: "The undersigned, being duly sworn, states upon information and belief that the facts set forth in the foregoing information are true." It is irrelevant that his affidavit was not on a separate piece of paper. In signing that he stated "upon information and belief that the facts set forth" were true, Ziegler converted that part of the information into his own affidavit.

Ziegler resists this conclusion and tries to distinguish *Kalina* by arguing that he did not attest to the truth of the allegations in the information because he was empowered by state law to verify the information. Illinois law provides that "an information shall be signed by the State's Attorney and sworn to by him or another." 725 Ill. Comp. Stat. 5/111-3(b). This statute thus distinguishes between the signing of the information as a charging document, which "shall" be done by the State's Attorney, and swearing to the facts, which may be done "by him or another."

All this shows is that Illinois law tracks the distinction between the roles of initiating a prosecution and swearing to facts—two roles that the Supreme Court took great care to keep separate in *Kalina*. An Illinois prosecutor who complies with state law that "an information shall be signed by the State's Attorney" is using her professional judgment. See *Kalina*, 522 U.S. at 129–30 (recognizing a prosecutor is acting as an advocate in preparing and filing an information, drafting a witness's affidavit, and deciding that the evidence is strong enough to find probable cause); see also *Thomas v. City of Peoria*, 580 F.3d 633, 638–39 (7th Cir. 2009) (recognizing absolute immunity for a prosecutor who filed for an arrest warrant). A

prosecutor who signs and files an information, but does not swear to any of the facts contained in it, is protected by absolute immunity because she is acting as an advocate of the State.

But, as *Kalina* explains, a prosecutor does not act as an advocate when testifying to facts because her professional "judgment could not affect the truth or falsity of the factual statements themselves." *Kalina*, 522 U.S. at 130. Accordingly, when a prosecutor goes beyond signing the information to initiate the suit by swearing to the facts it contains, the attorney is no longer absolutely immune from suit.

Ziegler briefly mentions that he seeks qualified immunity in the alternative. We reject his argument for the same reasons discussed above regarding Sherrick and Shaw. The facts alleged permit the reasonable inference that Ziegler swore to false information to obtain the warrant that led to Olson's arrest. It is unclear at this stage if the false information was provided by Sherrick and Shaw, by Ziegler, or even by all three defendants. That ambiguity does not defeat the Olsons' plausible claims for relief against the three defendants. The Olsons' allegations are sufficient for the claims to proceed to discovery, which is likely to shed light on what allegedly false information was provided, and by whom. See *Brooks*, 578 F.3d at 581 (holding that a claim is plausible if the facts alleged raise a reasonable expectation that discovery will yield evidence supporting the allegations).

D. *Claims Against Sheriff Walsh and Champaign County*

The district court also dismissed the claims against Sheriff Walsh and Champaign County. The court dismissed Walsh because a supervisor is not liable under § 1983 for a subordi-

nate's violation of a person's constitutional rights. Champaign County was dismissed because the plaintiffs failed to state a *Monell* claim. But we believe the district court misunderstood the Olsons' claims. The Olsons did not sue Walsh or Champaign County for federal false arrest under § 1983.

The Olsons sued Sheriff Walsh under a theory of *respondeat superior* as a supervisor liable for a subordinate's state law torts, in this case false arrest and malicious prosecution. After concluding that the Olsons' complaint failed to state a federal claim, the district court declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over the state law false arrest and malicious prosecution claims. We reverse the dismissal of the federal claims, so the state law claims against Walsh—and Sherrick, Shaw, and Ziegler—should be considered anew on remand.

The Olsons sued Champaign County because state law requires the county to indemnify Sheriffs and their deputies for damages for torts committed in the scope of their employment. See 745 Ill. Comp. Stat. 10/9-102. Champaign County is a necessary party to a suit against a Sheriff under federal law. See *Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003) (holding that "a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer (sheriff, assessor, clerk of court, and so on) in an official capacity"), citing Fed. R. Civ. P. 17 & 19. The plaintiffs have sued Sheriff Walsh in his official capacity, so we reverse the dismissal of Champaign County. It is a necessary party to this suit as long as Sheriff Walsh remains a party.

   The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.