In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 12-2217

FOZYIA HURI,

*Plaintiff-Appellant,*

*v.*

OFFICE OF THE CHIEF JUDGE OF THE
CIRCUIT COURT OF COOK COUNTY, *et al.*,

*Defendants-Appellees.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 3675 — **Samuel Der-Yeghiayan**, *Judge.*

———————

ARGUED APRIL 23, 2015 — DECIDED OCTOBER 21, 2015

———————

Before BAUER and SYKES, *Circuit Judges*, and REAGAN,
*Chief District Court Judge.*[*]

REAGAN, *Chief District Judge.* Fozyia Huri sued her em-
ployers at the Circuit Court of Cook County, Illinois, alleging
Defendants subjected her to a hostile work environment on

———————

[*] Of the Southern District of Illinois, sitting by designation.

the basis of her religion (Islam) and national origin (she hails from Saudi Arabia), and further that they retaliated against her for complaining about that discrimination. Huri brought claims under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 ("Title VII"), and—claiming her First and Fourteenth Amendment rights were violated—42 U.S.C. § 1983.

The district court disposed of the case at the motion to dismiss stage, concluding Huri failed to state a claim upon which relief could be granted and, in any event, that her supervisors were entitled to qualified immunity on the constitutional claims. Huri appeals, and for the following reasons we reverse and remand for further proceedings.

## I. Background

We review the grant of a motion to dismiss *de novo*, construing all well-pleaded facts (and all reasonable inferences from them) in the light most favorable to the nonmoving party. *Doe v. Vill. of Arlington Hts.*, 782 F.3d 911, 914 (7th Cir. 2015); *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014). Facts are taken from Huri's Second Amended Complaint.

In 2000, Huri began working at the Circuit Court of Cook County. Her manner of dress marked her as a follower of Islam: she always wore a hijab, an "Islamic head scarf" covering her hair, but not her face. From 2002 through November 2010, she worked as a child care attendant—the only one who was an Arab, and the only one who was a Muslim—under Defendant Sylvia McCullum. McCullum is neither an Arab nor a Muslim; she is a devout (and allegedly vocal) Christian.

According to the Second Amended Complaint, McCullum was unfriendly from the moment the two were introduced. (McCullum, the executive director for all Cook County court system child care attendants, did not even bother to introduce herself to Huri—the only attendant stationed in the same building—for two weeks.) Over the eight years Huri worked for her, McCullum repeatedly told Huri one of her colleagues was a "good Christian" and a "good church-going Christian," that the chief judge was a "good Christian," and that McCullum herself was a "good Christian."

In 2009, McCullum ratcheted up the rhetoric, telling a co-worker to work with a "good Christian" rather than with Huri, who was "evil." The same year, McCullum asked several child care attendants to hold hands and, when they did so, McCullum said a prayer "in the name of Jesus Christ." Further, McCullum falsely criticized Huri, made false misconduct allegations against her, subjected her to different rules than her co-workers, screamed at her, and generally subjected her to greater scrutiny than her co-workers.

Huri filed internal complaints regarding McCullum's behavior. McCullum became aware of those complaints and told Huri that the Chief Judge's Office was uninterested in — and tired of—Huri's complaints. Then, in retaliation for Huri's complaints, McCullum made more false criticisms and allegations of misconduct.

In November 2010, Huri was transferred to the Court Reporters' Office at the Cook County circuit court. Defendants Marilyn Filishio (the Court Reporters' Office Administrator) and James Lawless (Filishio's assistant) generally behaved as badly as McCullum, retaliating against Huri for filing Equal Employment Opportunity complaints (or "charges") and

subjecting her to the same sorts of false allegations, different rules, and greater scrutiny because Huri is a Muslim Arab. Additionally, Filishio and Lawless prohibited Huri from accessing her office early (other employees have 24-hour access), prohibited Huri's daughter from waiting for Huri in the lobby (children of non-Muslim, non-Arab employees are admitted to the lobby *and* offices), and prohibited Huri (and Huri alone) from having non-work items in the office. They also excluded Huri from a departmental social gathering at the office, and Filishio denied Plaintiff time off for an Islamic religious holiday. Huri repeatedly complained to the Chief Judge's Office, to no effect.

During her travails, Huri filed three complaints (or "charges") with the Equal Employment Opportunity Commission ("EEOC"). She submitted the first charge *pro se* in May 2010, and relayed the following regarding her time under McCullum:

> I was hired by Respondent on June 5, 2000. My current position is Childcare Attendant. During my employment, I have been subjected to harassment because of my religion and national origin. I filed internal complaints, however, the harassment continued.

> I believe I have been discriminated against because of my religion, Muslim, and national origin, Saudi Arabian, in violation of Title VII of the Civil Rights Act of 1964, as amended.

> I also believe I have been retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Huri's filed her second charge in April 2011 to correct a technical deficiency in the first.

Huri's third charge, filed in November 2011, relates to her time in the Court Reporters' Office. The detailed third charge lists all the allegations against Filishio and Lawless recounted above. The EEOC issued right-to-sue letters for each charge, and Huri filed suit.

Huri's Second Amended Complaint invoked two statutory provisions: Title VII, which makes it unlawful to discriminate against an employee, retaliate against her, or subject her to a hostile work environment based on race, color, religion, sex or national origin; and 42 U.S.C. § 1983, under which individuals can be held liable for constitutional violations.[1] Huri alleged Defendants subjected her to retaliation for her complaints, and to a hostile work environment because she is Muslim and an Arab.

On Defendants' motions to dismiss, the district court disposed of the entire case. As discussed below, the analysis below is replete with error, so we must remand.

## II. Discussion

Huri assigns several errors to the district court. We turn first to whether her Title VII hostile work environment claims—dismissed because the district court determined they were not within the scope of her EEOC charges—should have survived that analysis. Because we answer that question affirmatively, we proceed to examine those claims

---

[1] Title VII only authorizes suits against the employer as an entity. *Smith v. Bray*, 681 F.3d 888, 896 n. 2 (7th Cir. 2012).

alongside the Title VII and § 1983 claims, which (with one exception, briefly addressed in Part III, *infra.*) fell to the district court's misguided application of the federal pleading standards.

### A. *Huri's EEOC Charges Support her Title VII Claims*

Preliminarily, we agree with Huri that the district court erred in dismissing her Title VII hostile work environment claims for failing to exhaust administrative remedies.

As a precondition to filing claims under Title VII, Huri had to file a charge with the EEOC. *See Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013). The primary purpose of the EEOC charge requirement is twofold: it gives the EEOC and the employer a chance to settle the dispute, and it gives the employer notice of the employee's grievances. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

Huri attached three EEOC charges to the Second Amended Complaint. Her first charge (filed *pro se*) was submitted in May 2010 and broadly describes "harassment" and discrimination on the basis of her race and national origin, plus retaliation for making internal complaints. Her third charge, filed in November 2011 with the help of counsel, covers her post-transfer period in the Court Reporters' Office and includes very detailed allegations that mirror the Second Amended Complaint.

Courts review the scope of an EEOC charge liberally. *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005). Most EEOC charges are (like Huri's first one) drafted by laypersons rather than lawyers, so a Title VII plaintiff need not include in her charge every fact that, individually or in combi-

nation, forms the basis of a subsequent lawsuit's claims. *Cheek*, 31 F.3d at 500. *See also Babrocky v. Jewel Food Co.*, 773 F.2d 857, 865–66 (7th Cir. 1985) (district court "erred by requiring an exact correspondence between the words of the EEOC charge and the judicial complaint"). To be cognizable in federal court, a Title VII claim must simply be "like or reasonably related to the allegations of the charge and growing out of such allegations." *Cheek*, 31 F.3d at 500. The relevant claim and the EEOC charge must, at a minimum, describe the same conduct and implicate the same individuals. *Moore v. Vital Prods.*, 641 F.3d 253, 257 (7th Cir. 2011).

Defendants concede that Huri's November 2011 charge suffices to support her post-transfer allegations, but contend that the May 2010 charge did not describe a hostile work environment (and thus fails to support any Title VII hostile work environment claims pertaining to Huri's time as a child care attendant). The first charge, Defendants claim, mentions discrimination and retaliation, but does not "allege a hostile work environment."

By highlighting the absence of the phrase "hostile work environment," Defendants read the first EEOC charge too narrowly. They conveniently overlook simple but important language (emphasis added): "During my employment, I have been subjected to *harassment* because of my religion and national origin. I filed internal complaints [and] the *harassment* continued." In the context of Title VII cases, the word "harassment" frequently describes the conduct that defines the phrase "hostile work environment." *See Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1032–33 (7th Cir. 2003) ("Harassment … is a broad term which encompasses all forms of conduct that unreasonably interfere with an in-

dividual's work performance or create an intimidating, hostile, or offensive working environment."); *see also Dandy v. Utd. Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004) ("harassment" informs the hostile work environment analysis).[2] We decline to punish Plaintiff, whose first charge was drafted *pro se*, for describing her plight with the same interchangeable phraseology frequently used by this Court.

Given Huri's inclusion of nationality- and religion-based harassment in the her first EEOC charge, her employers had no reason to be surprised by her Title VII hostile work environment allegations covering her time as a child care attendant. We conclude those allegations are reasonably related to the contents of Huri's first EEOC charge, which implicates the same individuals and behavior pertinent to this suit. Defendants cede (and the detail of the document clearly shows) that Huri's third EEOC charge supports the later allegations pertaining to her time in the Court Reporters' Office. Dismissal of Huri's hostile work environment claims was erroneous.

### B. The Complaint Passes Muster under Twombly / Iqbal

To survive a motion to dismiss under Rule 12(b)(6), the complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary, but the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests. *Olson v. Champaign*

---

[2] *Dandy* was a § 1981 action, but the substantive standards under that statute also apply in Title VII cases. *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012).

*Cnty.*, 784 F.3d 1093, 1098 (7th Cir. 2015) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Neither conclusory legal statements nor abstract recitations of the elements of a cause of action add to the notice that Rule 8 demands, so they do not help a complaint survive a Rule 12(b)(6) motion. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

A pleader's responsibility is to state a claim for relief that is plausible on its face. *Id.* at 404 (citing *Twombly*, 550 U.S. at 570, and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plausibility does not mean probability: a court reviewing a 12(b)(6) motion must "ask itself *could* these things have happened, not *did* they happen." *Id.* (emphasis there). The standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the allegations. *Olson*, 784 F.3d at 1099.

In *Swanson*, this Court had occasion to apply current pleading standards to a discrimination claim (under the Fair Housing Act rather than Title VII, but that difference is immaterial here—both statutes forbid discrimination on account of race). A complaint that identified "the type of discrimination" the plaintiff thought occurred, "by whom, … and when" was "all [the plaintiff] needed to put in her complaint." *Swanson*, 614 F.3d at 405. *See also EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781–82 (7th Cir. 2007) (religious discrimination plaintiff need only say that the employer held the worker's religion against him).

Huri's Second Amended Complaint plausibly alleges Title VII hostile work environment and retaliation claims, and sufficiently pleads hostile work environment claims under § 1983.

### 1.  The Title VII Claims

Huri's Second Amended Complaint advances claims of both hostile work environment and retaliation. Title VII forbids both, though the substantive standards differ. A comparison of the Second Amended Complaint to the guiding legal principles reveals that Huri easily clears the plausibility threshold.

To plead a Title VII retaliation claim, a plaintiff must (though she need not use the specific terms) allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). In the retaliation context, "adverse employment action" simply means an employer's action that would dissuade a reasonable worker from participating in protected activity. *Chaib v. Indiana*, 744 F.3d 974, 986–87 (7th Cir. 2014).

Here, it is beyond dispute that Huri engaged in protected activity by filing EEOC charges and making internal complaints. Whether she was subjected to an adverse employment action is also apparent: the litany of malfeasance she alleges—screaming, false disciplinary reports, mistreatment of her daughter, exclusion from social functions, denial of time off, *etc.*—would certainly cause a reasonable worker to think twice about complaining about discrimination—that's all it takes in the retaliation context.[3] *See Chaib*, 744 F.3d at

---

[3] It bears mention: employees who bring a Title VII claim of discrimination (rather than retaliation) have a heavier burden: an "adverse employment action" in those cases must visit upon a plaintiff a significant change in employment status, and often involves the employee's current wealth, her career prospects, working conditions, *etc. Andrews v. CBOCS*

986–87; *Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) (complaint stated retaliation claim when plaintiff simply alleged she complained about discrimination then was subject to adverse employment actions, then listed a number of those specific actions).

To state a Title VII hostile work environment claim, a plaintiff must allege (1) she was subject to unwelcome harassment; (2) the harassment was based on her national origin or religion (or another reason forbidden by Title VII); (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). To rise to the level of a hostile work environment, conduct must be sufficiently severe or persuasive to alter the conditions of employment such that it creates an *abusive* relationship. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (emphasis there).

Here again, Huri's pleadings describe events that *could* have happened and which discovery can be reasonably expected to reveal. *Swanson*, 614 F.3d at 404; *Olson*, 784 F.3d at 1099. And if discovery goes Huri's way, she *could* prove her case. The basic questions demanded by *Swanson* are answered here: the type of discrimination (national origin and / or religion); the whom (Huri's supervisors); and the when (from 2002 through the date suit was filed). Huri has alleged that she was harassed, and it is certainly within reason to conclude that Defendants, due to Huri's garb and appear-

---

*West, Inc.*, 743 F.3d 230, 235 (7th Cir. 2014); *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007).

ance, knew she was a Muslim and an Arab. If Huri's allega-
tions prove true, employer liability will be proper since her
direct supervisors harassed her. *See Vance v. Ball State Univ.*,
--- U.S. ----, 133 S. Ct. 2434, 2439 (2013). And it is premature
at the pleadings stage to conclude just how abusive Huri's
work environment was. It is enough to say that it is plausible
that the screaming, prayer circles, social shunning, implicit
criticism of non-Christians, and uniquely bad treatment of
Huri and her daughter could plausibly be abusive.

The pleading standards in Title VII cases are, of course,
different from the evidentiary burden a plaintiff must subse-
quently meet. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511
(2002). It may be that Huri, once discovery has run its
course, cannot produce evidence to survive summary judg-
ment. But that question can safely be postponed to another
day. Defendants have fair notice of Huri's claims and the
grounds upon which those claims rest, and the details in her
Second Amended Complaint present a story that "holds to-
gether." *Swanson*, 614 F.3d at 404. Dismissal of the Second
Amended Complaint was therefore error.

### 2.   The Constitutional Claims

We turn to Huri's § 1983 claims, which parallel her Title
VII hostile work environment claims of religion- and nation-
ality-based harassment.

Constitutional claims must be addressed under the most
applicable provision, *Conyers v. Abitz*, 416 F.3d 580, 586 (7th
Cir. 2005) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)),
and this Court has recognized the distinction between claims
that target a plaintiff's religious practices and those in which

a defendant arbitrarily discriminates against a plaintiff because of her religion, *Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988). The First Amendment's religion clauses[4] guide the former, and the Fourteenth Amendment's Equal Protection Clause guides the latter. *Id.*

Here, Huri's § 1983 hostile work environment claims are straightforward theories of arbitrary treatment based on her religion and nationality. In other words, we analyze both § 1983 claims under the Equal Protection Clause. It is a short step from there to concluding Huri's § 1983 claims should be resurrected on remand. When a plaintiff uses § 1983 as a parallel remedy to a Title VII harassment claim, the *prima facie* elements to establish liability are the same under both statutes. *Rivera v. P.R. Aqueduct & Sewers Auth.*, 331 F.3d 183, 192 (1st Cir. 2003) (collecting cases). Stating a hostile work environment claim under Title VII therefore establishes a viable claim to § 1983 relief. *Id.* As discussed above, Huri stated viable Title VII hostile work environment claims. Her § 1983 claims against McCallum, Filishio, and Lawless survive for the same reasons.

---

[4] The First Amendment proscribes, in pertinent part: "Congress shall make no law respecting an establishment of religion," (the Establishment Clause), "or prohibiting the free exercise thereof" (the Free Exercise Clause). U.S. Const. amend. I. Both clauses are operative against the States by virtue of the Fourteenth Amendment's Due Process Clause. *See Everson v. Board of Ed. Of Ewing*, 330 U.S. 1 (1947) (Establishment Clause incorporated); *Cantwell v. Connecticut*, 310 U.S. 296 (1940) (Free Exercise Clause incorporated).

### C. *Qualified Immunity and County's Party Status*

Two tangential issues remain. Neither requires abundant discussion.

First, the district court's cursory dismissal of Defendants Filishio and Lawless on qualified immunity grounds was error.[5] The validity of a qualified immunity defense is reviewed *de novo*. *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012). Qualified immunity is improper where, as here, the asserted right is clearly established at the time the conduct occurred (or constitutes an obvious violation of a constitutional right). *Doe*, 782 F.3d at 915. Huri's Fourteenth Amendment right to be free from a hostile work environment was well-established by 2010, when Filishio and Lawless began supervising her. *See Williams v. Seniff*, 342 F.3d 774, 787 (7th Cir. 2003) (reviewing elements of an Equal Protection hostile work environment claim). Likewise, freedom from arbitrary religion- and nationality-based discrimination had long been illegal. *Reed*, 842 F.2d at 962. *See also Tamayo*, 526 F.3d at 1090 (because immunity defense usually depends on the facts, dismissal at pleading stage is inappropriate).

Finally, Defendants ask this Court to determine whether Cook County is a proper party to the lawsuit. That issue was not presented below, so we decline to address it here. *See Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 308

---

[5] It is unclear precisely how Defendant McCullum prevailed below as to Huri's constitutional claims. Huri posits that Defendant McCullum must also have been granted qualified immunity. But because that defense is unavailable to McCullum and the record is murky, we invite the district court to clarify the matter on remand.

(7th Cir. 2010) ("In civil litigation, issues not presented to the district court are normally forfeited on appeal.").

### III. Conclusion

The judgment of the district court is REVERSED, and this case is REMANDED for further proceedings consistent with this opinion.